# ELLIS *v.* SCOTT.

PATENTS; INTERFERENCE; DISCLOSURE; EVIDENCE.

Where the successful party to an interference filed another application based upon the disclosure he obtained in the first interference, and a second interference was declared between the same parties, and it appeared that such party had built an unsuccessful device based upon his first application, which resulted, he claimed, in his hitting upon the invention of the issue of the second interference; but, according to the dates relied upon by him in the second interference, he possessed such information when he filed his first application, it was *held* that he was not entitled to an award of priority in the second interference. (Following *Peirce* v. *Hiss,* 33 App. D. C. 1.)

No. 964. Patent Appeals. Submitted March 10, 1915. Decided April 5, 1915.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference proceeding.                 *Affirmed.*

The facts are stated in the opinion.

*Mr. Ralph N. Flint* and *Mr. B. G. Foster* for the appellant.

*Mr. Edward N. Pagelsen* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

Appellant, Lewis M. Ellis, appealed from the decision of the Commissioner of Patents awarding priority of invention to appellees, Burton W. Scott and Charles J. Schiemer. Appellees

filed their application January 23, 1911, and appellant filed his application August 29, 1912.

The invention in issue relates to an improvement in the manner of feeding fuel to internal combustion engines. The issue is in three counts, as follows:

"1. In an explosive engine, the combination of a cylinder, a piston therein, a compression chamber communicating with the cylinder through a port adapted to be opened and closed by the piston, a fuel receptacle, a nozzle connecting said receptacle with said cylinder through said port, means for effecting communication between said receptacle and said compression chamber, and means for closing said communication in advance of the opening of said port, and for re-establishing communication between the receptacle and chamber when said port is fully opened.

"2. In an explosive engine, the combination of an engine cylinder, a piston therein, a compression chamber, a port connecting said chamber with said cylinder adapted to be opened and closed by said piston, a fuel receptacle, a nozzle connecting said receptacle with the cylinder through said port, means for admitting air under pressure from said chamber into said receptacle, means for maintaining said pressure therein in advance of the opening of said port and for re-establishing communication between said receptacle and said compression chamber when said port is opened.

"3. In an explosive engine, the combination of a cylinder, a piston therein, an air compression chamber, a port connecting said chamber with said cylinder adapted to be opened and closed by said piston, a fuel receptacle, a nozzle connecting said receptacle with said cylinder through said port, a conduit connecting the compression chamber with said receptacle, the piston closing said conduit during a portion of its travel, the wall of the piston having a vent port positioned to register with said conduit when said piston reaches the limit of its power stroke."

The parties were in a former interference declared January 27, 1911. Appellees were in that interference on the same application here involved. The application of appellant differed from his application in the present case, in that it did not con-

tain the opening in the piston which is the characteristic feature of the counts in issue. Appellant secured a disclosure of the present counts from the application of appellees in the former contest. Appellant prevailed in that case, but did not file his present application until almost a year after he came into possession of appellees' disclosure. According to appellant's contention here, he must have intended to claim the present invention. It, therefore, is strange that he should wait so long before asserting his rights.

But appellant is confronted with a more serious inconsistency. He built an engine embodying the subject-matter of his first application, which did not successfully operate. But he asserts that when it proved unsuccessful he hit upon the present invention, which turned failure into success. Notwithstanding that, according to his dates now relied upon, he possessed this information when he filed his first application, it embodied the unsuccessful device. In other words, according to his own showing, he deliberately omitted from his first application the only element which stood between him and success, though he now contends he was then in possession of it. Referring to this conduct of appellant, the Board of Examiners in Chief pointed out in its decision that, notwithstanding the fact that Ellis prevailed in the former case, "he took no steps toward filing his present application until nearly a year after obtaining access to the Scott and Schiemer disclosure. Ellis contends that he was entirely within his rights in pursuing this course, as possibly he was, but the Examiner of Interferences thought, as we think, that, measured by the course of ordinary human conduct, this was a remarkable procedure on the part of one who really at the time expected to lay claim to the invention here in contest."

Were it not for these inconsistencies, appellant's case has some elements of strength, but we think it is subject to the objection held fatal in *Peirce* v. *Hiss,* 33 App. D. C. 1, where Mr. Justice Robb, speaking for the court, said: "We have examined this testimony, and, while the question is not free from doubt, we are not disposed, owing to the circumstances under which Peirce's application was filed, to disturb the conclusion

of the Commissioner and Board of Examiners in Chief. Peirce, being a manufacturer of cable hangers, an inventor, and highly skilled in this art, was certainly in a position to understand and fully appreciate the value of a device like this, and it is inconceivable, if he did conceive it and embody his conception in concrete form (which, in this case, we apprehend would have constituted a reduction to practice), that he should have failed to include it in his earlier application. Therefore, without entering upon an analysis of the testimony, we affirm the decision of the Commissioner."

The decision of the Commissioner of Patents is affirmed, and the clerk is directed to certify these proceedings as by law required.                                    *Affirmed.*